UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY_____D.C.
OCT 05 2022
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

CASE NO. 22-cr-60204-Ruiz/Strauss

18 U.S.C. § 1031

UNITED STATES OF AMERICA

v.

ROYAL AIR MUSEUM, INC.,

        Defendant.
_____/

## INFORMATION

The United States Attorney charges that, at all times relevant to this Information:

### GENERAL ALLEGATIONS

1. The U.S. General Services Administration (GSA) administered the Federal Surplus Personal Property Donation Program. GSA arranged the transfer and utilization of surplus U.S. Government property by other federal agencies.

2. The Florida State Agency for Surplus Property (FLSASP) was authorized to receive surplus property from the federal government and to distribute that property to qualified organizations.

3. The FLSASP requested property from the GSA on behalf of qualified organizations. Once the qualified organization was allocated the property, the FLSASP then administered distribution of the property and compliance with the program requirements. All correspondence regarding the property was conducted between the FLSASP and the qualified organization, often via email.

4.  United States property designated as excess and/or surplus was offered and made available to qualified organizations by GSA through electronic postings of the equipment on a web-based system titled "GSAXcess."

5.  A "qualified organization" was defined, in pertinent part, as "[a]n eligible nonprofit organization or institution which is exempt from taxation under section 501 of the Internal Revenue Code (26 U.S.C. 501), for the purpose of education or public health (including research for any such purpose)." This definition included museums attended by the public.

6.  A qualified organization obtained property from FLSASP by identifying surplus U.S. Government property that it needed and then submitting a request to the FLSASP for those items. A qualified organization made such requests through its authorized representatives. A qualified organization must have submitted an eligibility application to the FLSASP, which identified the intended use of each surplus item obtained. The program did not permit private individuals or charities to obtain federal property for personal use or gain.

7.  Qualified organizations were permitted to obtain the requested surplus property items only if they complied with certain regulations established by GSA and the FLSASP. The regulations included the following requirements: (a) the item(s) shall be placed in use, for the reported purpose, by the organization no later than 12 months of the organization obtaining the item(s), (b) the items are to be used by the organization for a total of at least 60 months before the organization is allowed to sell, trade, lease, lend, bail, cannibalize, encumber or otherwise dispose of the items, and (c) the organization is to obtain permission from GSA and/ or the FLSASP before it is allowed to sell, trade, lease, lend, bail, cannibalize, encumber or otherwise dispose of the items.

8. In the event that a qualified organization did not use or handle the property as required by the program and listed in the previous paragraph, title and right to possession of the property shall, at the option of GSA, revert to the United States Government. Upon demand, the qualified organization, as directed by GSA through the FLSASP, must release the property to the U.S. Government.

9. **ROYAL AIR MUSEUM, INC.** (hereinafter referred to as "**the RAM**") was considered a qualified organization to receive federal surplus property.

10. Among the items obtained by **the RAM** from GSA through the FLSASP was a Learjet C-21A aircraft, Serial Number 84-0111, (hereinafter referred to as "Learjet 84-0111"); a Learjet C-21A aircraft, Serial Number 84-0114 (hereinafter referred to as "Learjet 84-0114"); a Learjet C-21A aircraft, Serial Number 84-0123 (hereinafter referred to as "Learjet 84-0123"); a Beechcraft C-12D aircraft, Serial Number 81-23545 (hereinafter referred to as "Beechcraft 81-23545"); a Gulfstream C-20D aircraft, Serial Number 163691 (hereinafter referred to as "Gulfstream 163691"); an X34 aircraft, Serial Number A1 (hereinafter referred to as "X34 A1"); an X34 aircraft, Serial Number A2 (hereinafter referred to as "X34 A2"); and 729 Nortel Avaya desk telephones (hereinafter referred to as "the Nortel telephones").

## COUNT 1
(Major Fraud Against the United States, 18 U.S.C. § 1031)

1. The General Allegations are realleged and expressly incorporated herein as if set forth in full.

2. From on or about November 10, 2015 through on or about July 27, 2018, in Broward County, in the Southern District of Florida and elsewhere, the defendant,

**ROYAL AIR MUSEUM, INC.,**

3

did knowing execute, and attempt to execute, a scheme and artifice with the intent to defraud the United States and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in connection with a grant, contract, subcontract and other form of Federal assistance valued at $1,000,000 or more.

## The Scheme to Defraud

3. The scheme to defraud consisted of acquiring surplus U.S. Government property by means of false and fraudulent representations concerning the intended use, placement and location of that property, and thereafter selling, attempting to sell, loaning, attempting to loan, leasing, attempting to lease, transferring and converting the property to the use of another who was not entitled thereto, and otherwise used in contravention of the stated purposes under which **the RAM** was permitted to acquire the property initially. Among the items fraudulently obtained by **the RAM** was a Learjet C-21A aircraft, Serial Number 84-0111, (hereinafter referred to as "Learjet 84-0111"); a Learjet C-21A aircraft, Serial Number 84-0114 (hereinafter referred to as "Learjet 84-0114"); a Learjet C-21A aircraft, Serial Number 84-0123 (hereinafter referred to as "Learjet 84-0123"); a Beechcraft C-12D aircraft, Serial Number 81-23545 (hereinafter referred to as "Beechcraft 81-23545"); a Gulfstream C-20D aircraft, Serial Number 163691 (hereinafter referred to as "Gulfstream 163691"); an X34 aircraft, Serial Number A1 (hereinafter referred to as "X34 A1"); an X34 aircraft, Serial Number A2 (hereinafter referred to as "X34 A2"); and 729 Nortel Avaya desk telephones (hereinafter referred to as "the Nortel telephones").

4. On May 27, 2016 **the RAM** submitted a signed letter of intent to the FLSASP seeking acquisition of Gulfstream 163691. The letter of intent stated, in pertinent part, the following:

> The aircraft requested will be used to promote our organization and preservation of aerospace history, which includes purposes of display, exhibition and educational purposes. As the subject aircraft are listed with GSAexcess, it will be utilized for purposes of the museum and would remain as museum property subject to the terms and regulations as imposed by the GSA.

5. On April 6, 2017, a representative of **the RAM** signed a conditional transfer document for Gulfstream 163691. The conditional transfer document stated, in pertinent part, the following:

> ..in consideration of and reliance upon the representations of the Royal Air Museum, Inc. (hereinafter called the Donee) that the property hereinafter described is required in the furtherance of the Donee's program and that such property will be used solely in connection with such programs and more specifically for all the following purpose(s): Cannibalization in accordance with the proposed program and plan as set forth in the Donee's 'Letter of Intent' dated June 16, 2015 as amended, which Expression of interest is hereby incorporated herein and made a part thereof, and for no other purpose, does hereby deliver, sell, assign, and transfer all of its rights, title, and interest in and to the following described non-combat-type aircraft, aircraft engines, and propellers, AIRCRAFT, Gulfstream, C-20D, Serial # 163691, together with all engines, appurtenances, and accessories attached thereto (all of which are hereinafter referred to as the Property), which has been determined by GSA to have a fair market value of $7,400,000.00, unto the Donee to have and hold the property…

The conditional transfer document also stated the following

> … the Donee shall not sell, trade, lease, lend, bail, cannibalize, encumber, or otherwise dispose of the Property…without the prior written approval of GSA.

6. On April 18, 2017, Gulfstream 163691 was officially transferred from GSA and the FLSASP to **the RAM**.

7. On April 20, 2017, the engines from Gulfstream 163691 were sold and transferred to Corporation 1 without the prior written approval of GSA.

8. In July 2018, the fuselage and other aircraft parts from Gulfstream 163691 were sold and transferred to Corporation 2 without the prior written approval of GSA.

All in violation of Title 18, United States Code, Section 1031.

*[signature]*
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

*[signature]*
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

ROYAL AIR MUSEUM, INC.,

## CERTIFICATE OF TRIAL ATTORNEY*

_____/
**Defendant.**

**Superseding Case Information:**

**Court Division** (select one)
- ☐ Miami   ☐ Key West   ☐ FTP
- ☑ FTL     ☐ WPB

New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of New Counts _____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) **No**
   List language and/or dialect: _____

4. This case will take **0** days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I    ☑ 0 to 5 days
   - II   ☐ 6 to 10 days
   - III  ☐ 11 to 20 days
   - IV   ☐ 21 to 60 days
   - V    ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☐ Felony

6. Has this case been previously filed in this District Court? (Yes or No) **No**
   If yes, Judge _____ Case No. _____

7. Has a complaint been filed in this matter? (Yes or No) **No**
   If yes, Magistrate Case No. _____

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) **Yes**
   If yes, Judge **Singhal** Case No. **21-60329-CR-SINGHAL**

9. Defendant(s) in federal custody as of _____

10. Defendant(s) in state custody as of _____

11. Rule 20 from the _____ District of _____

12. Is this a potential death penalty case? (Yes or No) **No**

13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) **No**

14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) **Yes**

By: _____
LAWRENCE D. LaVECCHIO
Assistant United States Attorney
FL Bar No.        305405

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Royal Air Museum, Inc.

**Case No**: _____

Count #: 1

Major Fraud Against the United States

Title 18, United States Code, Section 1031
* **Max. Term of Imprisonment:**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:**
* **Max. Fine:** $5,000,000

Count #:

_____

* **Max. Term of Imprisonment:**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:**
* **Max. Fine:**

Count #:

_____

* **Max. Term of Imprisonment:**
* **Mandatory Min. Term of Imprisonment (if applicable):**
* **Max. Supervised Release:**
* **Max. Fine:**

**\*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

AO 455 (Rev. 01/09) Waiver of an Indictment

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| ROYAL AIR MUSEUM, INC. | ) | |
| | ) | |
| *Defendant* | ) | |

## WAIVER OF AN INDICTMENT

I understand that I have been accused of one or more offenses punishable by imprisonment for more than one year. I was advised in open court of my rights and the nature of the proposed charges against me.

After receiving this advice, I waive my right to prosecution by indictment and consent to prosecution by information.

Date: _____

_____
*Defendant's signature*
ROYAL AIR MUSEUM, INC. by Mark Daniels as Director, President, Secretary and Authorized Representative

_____
*Signature of defendant's attorney*

BRUCE L. UDOLF
_____
*Printed name of defendant's attorney*

_____
*Judge's signature*

_____
*Judge's printed name and title*